UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| J. RYAN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15-cv-04144-NKL |
| ) | |
| UNITED TECHNOLOGIES CORP. ) | |
| and CARRIER CORP., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Pending before the Court is Defendants United Technologies Corporation and Carrier Corporation's motion to dismiss. [Doc. 19]. Defendants' motion is granted.

**I.    Pleading Standard**

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of a complaint if the plaintiff fails to plead sufficient facts to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In determining whether the complaint alleges sufficient facts to state a plausible claim to relief, all factual allegations made by the plaintiff are accepted as true. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (noting that legal allegations are not accepted as true). If the facts in the complaint are sufficient for the court to draw a reasonable

1

inference that the defendant is liable for the alleged misconduct, the claim has facial plausibility and will not be dismissed. *Iqbal*, 556 U.S. at 678.

## II. Background

In 2006, Plaintiff Ryan Williams spent $12,000 on a new home air conditioning unit, the Model 286A Bryant Evolution Series Heat Pump with Puron refrigerant (the "Heat Pump"). The Heat Pump was manufactured and marketed by United Technologies Corporation ("United") and its subsidiary, Carrier Corporation ("Carrier"). United also sells products under the brand names Bryant, Payne, and Totaline.

Defendants provided a ten-year limited warranty for Williams' Heat Pump, which stated[1]:

> **TEN-YEAR LIMITED WARRANTY ON COMPRESSOR ONLY** – If a defect is found in the compressor within ten years from the date of original installation of the product, Company will either provide a new or remanufactured compressor, without charge for the part itself, or, at the Company's option, allow a credit in the amount of the then factory selling price for a new equivalent compressor toward the retail purchase price of a new Bryant product.
>
> None of these warranties include labor or other costs incurred for diagnosing, repairing, removing, installing, shipping, servicing or handling of either defective parts <u>or</u> replacement parts, or new units.

Through its marketing materials, Defendants represented that the Heat Pumps were "reliable," "dependable," and "durable." Williams relied on these or similar statements in deciding to purchase his Heat Pump.

---

[1] Carrier and Bryant also provided a general warranty against product failure due to defective materials or workmanship. The conditions of the general warranty were substantively identical to the specific ten-year limited warranty on the compressor.

In the summer of 2010, Williams noticed that the Heat Pump was not cooling his home effectively. Around July 2010, the Heat Pump stopped working entirely. Williams sought to replace the Pump's defective compressor, but there was a shortage of replacement parts due to widespread problems with the Heat Pumps. Williams waited, without air conditioning in his home, for three weeks before the compressor was replaced. Defendants did not charge Williams for the replacement part, but he spent about $2,500 in labor costs to replace the compressor.

Around July 2014, the replacement compressor failed. By 2014, Defendants were aware that its compressors were experiencing widespread failure. Defendants acknowledged this compressor defect in four "Dealer Service Bulletins," dated April 17, 2012, September 17, 2012, May 20, 2013, and April 1, 2014. Defendants noted that the compressor defect affected a number of models, including Model 286A which Williams owned. The April 2014 bulletin stated that owners of the affected models could choose either to receive a replacement compressor per the warranty, which would assume the remainder of the original factory limited warranty, or pay a reduced price to receive a "[n]ew equivalent unit with a scroll compressor." Williams chose to exercise the second option, replacing the entire unit and incurring approximately $2,300 in related costs. The new unit did not include a new warranty, but was subject to the warranty applicable to the original Heat Pump.

The widespread compressor problems were also recognized by other consumers. Numerous customers posted online complaints about their defective Heat Pumps and Defendants' purported unwillingness to adequately remedy the issue.

## III. Discussion

Williams[2] claims that Defendants breached the express warranties and implied warranty of merchantability associated with the Heat Pump.[3] He also contends that Defendants violated the Missouri Merchandising Practice Act, Mo. Rev. Stat § 407.020 ("MMPA"), by misrepresenting the efficacy of its products and engaging in "unfair practices."

### A. Express Warranty Claims (Counts I and IV)

#### 1. Express Warranty Provisions

Defendants argue that Williams has failed to demonstrate a breach of the express warranty provisions associated with the Heat Pump because they satisfied the terms of the warranty and exceeded the warranty after Williams' Heat Pump failed a second time.

The Heat Pump was backed by the following limited warranty:

> **TEN-YEAR LIMITED WARRANTY ON COMPRESSOR ONLY** – If a defect is found in the compressor within ten years from the date of original installation of the product, Company will either provide a new or remanufactured compressor, without charge for the part itself, or, at the Company's option, allow a credit in the amount of the then factory selling price for a new equivalent compressor toward the retail purchase price of a new Bryant product.
>
> None of these warranties include labor or other costs incurred for diagnosing, repairing, removing, installing, shipping, servicing or handling of either defective parts or replacement parts, or new units.

---

[2] Williams brings his claims on behalf of himself and the putative class.
[3] Williams brings implied and express warranty claims under both Missouri law and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. "A court applies state warranty law for claims under the MMWA." *Marcus v. Apple, Inc.*, 2015 WL 151489 (N.D. Cal. Jan. 8, 2015). Therefore, the Court need only consider whether Williams' allegations are sufficient to state a claim under Missouri law.

4

[Doc. 20-1, p. 2] (emphasis in original). The warranty also stated that it was exclusive and could not be altered or enlarged. *Id.* at 3.

Williams does not dispute that when the Heat Pump stopped working in July 2010 Defendants provided Williams a new compressor at no cost for the part. Williams also concedes that when the Heat Pump again failed in July 2014, Defendants again offered him a new compressor free of charge. However, Williams contends that these actions were insufficient to satisfy the express warranty because a warranty that allows the warrantor to replace one defective part with an identical defective part is unconscionable and fails its essential purpose.

### a. Unconscionability

Williams contends that Defendants' interpretation of the warranty in this case, permitting them to replace a defective part with the same part they knew suffered from a defect, constitutes an unconscionable interpretation of the warranty. The Fourth Circuit concluded that a plaintiff's contentions in *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), were sufficient to defeat a motion to dismiss. The court discussed its conclusions regarding the disparities inherent in such a situation as follows:

> When a manufacturer is aware that its product is inherently defective, but the buyer has "no notice of [or] ability to detect" the problem, there is perforce a substantial disparity in the parties' relative bargaining power. In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies – including of course any warranty disclaimers – was neither "knowing" nor "voluntary," thereby rendering such limitations unconscionable and ineffective.

5

*Id.* at 296 (citations omitted). However, unlike in *Carlson*, there is no evidence that Defendants knew of the compressor defect when Williams purchased the Heat Pump in 2006. Thus, the Court must consider whether Defendants' actions in abiding by the explicit terms of the warranty amounted to unconscionability when Defendants discovered a defect in the product after its purchase.

Whether a contract term is unconscionable depends on the "facts relating to unconscionability impacting the formation of the contract." *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492 n.3 (Mo. banc 2012) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)). Missouri courts have eliminated all distinctions related to substantive and procedural unconscionability in adopting this more general framework. *Brewer*, 364 S.W.3d at 492-93 ("[T]he analysis of this Court's ruling today . . . no longer focuses on a discussion of procedural unconscionability or substantive unconscionability, but instead is limited to a discussion of facts relating to unconscionability impacting the formation of the contract. Future decisions by Missouri's courts addressing unconscionability likewise shall limit review of the defense of unconscionability to the context of its relevance to contract formation."). The Missouri Supreme Court explained the reasons for this analytic shift as follows:

> The purpose of the unconscionability doctrine is to guard against one-sided contracts, oppression and unfair surprise. *Cowbell, LLC v. Borc Building and Leasing Corp.*, 328 S.W.3d 399, 405 (Mo. App. 2010); *see also Woods*, 280 S.W.3d at 96. Oppression and unfair surprise can occur during the bargaining process or may become evident later, when a dispute or other circumstances invoke the objectively unreasonable terms. In either case, the unconscionability is linked inextricably with the process of contract formation because

>       it is at formation that a party is required to agree to the objectively
>       reasonable terms.

*Id.* (citing the United States Supreme Court's holding in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), as the justification for the court's abandonment of the substantive and procedural framework for unconscionability analysis).[4] Factors such as the relative bargaining power of the parties and one party's superior ability to discover a defect are relevant to the unconscionability analysis. *Id.* at 495.

Defendants in this case clearly had superior bargaining power to Williams and a superior ability to discover the defect in the Heat Pump prior to its failure in Williams' home. However, these facts alone do not make the warranty unconscionable. *Davis v. Sprint Nextel Corp.*, 2012 WL 5904327, at *2 (W.D. Mo. Nov. 26, 2012). Missouri law specifically permits the type of warranty Defendants provided with the Heat Pump, providing necessary replacement parts for free but requiring owners to pay for installation costs. See Mo. Rev. Stat. § 400.2-719(1)(a) ("the agreement may . . . limit[] the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts"). Moreover, sellers are not required to guarantee service or durability of all products in all circumstances.

---

[4] Courts have abandoned relying on the substantive/procedural unconscionability test particularly in cases involving arbitration agreements, where it is unclear that a customer would sign an agreement only under fraud, duress, or delusion, but the terms of the agreement appear unfair or violate public policy. *See Concepcion*, 563 U.S. 333.

Williams has presented no evidence of any procedural defect affecting the formation of the contract or the warranty.[5] The Court need only consider, then, whether the terms of the warranty are objectively unreasonable in this case such that they are unconscionable. The limited warranty covering the compressor made only one promise – that if the compressor failed within ten years of the purchase of the Heat Pump, Defendants would provide a replacement compressor free of charge. As Missouri law specifically permits this type of warranty, it cannot be unconscionable on its face. Williams' argument that it is unconscionable as applied ignores several facts.

First, Williams does not allege that Defendants knew of the defect at the time he purchased the Heat Pump. Limited warranties exist for situations such as this – to protect the seller from incurring an unlimited obligation to cure any defect arising in a product after its purchase. By its nature, the limited warranty recognized that a problem might arise with the compressor, and stated that in such event Defendants would repair or replace the part to ensure that the purchaser had a functional product for ten years. Defendants made no guarantees about product performance after ten years. To impose an obligation on Defendants to provide a functional product beyond the expiration of the ten year warranty would be novel, and contrary to the purpose of limited warranties which are routinely upheld by courts.

Second, Williams notes that after Defendants realized the compressor defect, they began offering consumers two repair options: 1) replacement parts free of charge as

---

[5] As discussed above, such a showing is not necessary for the Court to find unconscionability, but arguments regarding procedural defects would be relevant to the contract's conscionability at formation.

provided for in the warranty, or 2) the opportunity to purchase a new Heat Pump with a different type of compressor at a steeply discounted price. In 2014, when Williams' second compressor failed, he availed himself of the second option and purchased a new Heat Pump. This new unit cost him approximately $200 less than the labor costs to replace his original compressor. Given the availability of this second option, which not only met Defendants' obligations under the warranty but provided customers the opportunity to purchase a defect-free unit at a price equivalent to or less than the cost of availing themselves of the repair and replace warranty, the Court cannot conclude that the warranty is unconscionable as applied. Williams fairly received the benefits guaranteed him by the warranty. Though he may have believed upon purchasing the Heat Pump that it would last him longer than the ten year limited warranty, no such performance was guaranteed. Furthermore, he ended up with a unit that will likely last him beyond the warranty period as he purchased the discounted replacement unit.[6] The circumstances Williams identifies do not "shock the conscience" such that they are unconscionable, nor does this appear to be a bargain that no reasonable person would make.[7]

### b. Essential Purpose

Williams argues that in addition to being unconscionable, Defendants' warranty fails its essential purpose because replacing one defective compressor with another does not provide the consumer with a meaningful remedy.

---

[6] Williams does not plead that he has had any problems with the replacement unit since its installation in 2014. It is covered by the original limited warranty until 2016.

[7] Defendants also contend that Williams insufficiently plead the unconscionability claim under Rule 9(b); however, as the Court has concluded that the claim is deficient on the merits, it need not address the pleading issue here.

9

Williams recognizes that the warranty at issue constitutes a "repair and replace" warranty. "Repair and replace" warranties differ from warranties of future performance. *See Ontario Hydro v. Zallea Systems, Inc.*, 569 F.Supp. 1261, 1266 (D. Del. 1983). "A warranty of future performance of a product must expressly provide some form of guarantee that the product will perform in the future as promised. . . . On the other hand, a repair or replacement warranty does not warrant how the goods will perform in the future. Rather, such a warranty simply provides that if a product fails or becomes defective, the seller will replace or repair within a stated period." *Id.* A repair and replace warranty fails its essential purpose when the warrantor "because of his negligence in repair or because the goods are beyond repair, is unable to put the goods in warranted condition." *Oldham's Farm Sausage Co. v. Salco, Inc.*, 633 S.W.2d 177, 182 (Mo. Ct. App. 1982) (quotation omitted). Williams argues that by replacing the Heat Pump with another compressor suffering from the same latent defect, Defendants deprived him of the "substantial value of the bargain."

As discussed above, the essential purpose of Defendants' warranty was to provide buyers with replacement compressors at no cost if the compressors failed within the warranty period. This warranty did not guarantee that the Heat Pump or the compressor would function without issue for ten years or beyond the ten year warranty period, but presupposed that the compressor might fail, and provided that in such event the consumer would not bear the burden of paying for the replacement part. *See United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 2015 WL 5186465, at *10 (D.D.C. Sept. 4, 2015). As promised by the warranty, Defendants provided a replacement compressor

10

free of charge in 2010, and when the compressor failed again four years later gave Williams the option of receiving a second compressor at no charge or a substantial discount off of a new unit. Williams has not alleged that Defendants failed to live up to their obligation under the warranty.

The fact that Williams' compressor failed a second time four years after being replaced does not make Defendants' curative actions insufficient to satisfy the essential purpose of the warranty. The cases Williams cites to support his proposition that repeat failure of a product means that the warranty does not satisfy its essential purpose involve cases in which a warrantor repeatedly attempted to cure a defect and was unable to put the good in a workable state for any significant duration. *See Odham's Farm Sausage Co. v. Salco, Inc.*, 633 S.W.2d 177 (Mo. Ct. App. 1982); *see also Givan v. Mack Truck, Inc.*, 569 S.W.2d 243 (Mo. Ct. App. 1978) ("In total there were about 30 different occasions that something went wrong with the truck in the nine months that Randy Givan possessed it, and it was in repair shops for 107 days."). Here, Williams concedes that Defendants provided him a replacement part within three weeks and that after installation of the replacement part the Heat Pump was functional for approximately four years before Williams had another problem. Courts addressing similar warranties wherein the warranted product failed a second time within the warranty period after being functional for an extended period, and the warrantor offered to repair or replace the product as guaranteed by the warranty, have concluded that the warranties did not fail their essential purpose. *See Coe v. Philips Oral Healthcare, Inc.*, 2014 WL 722501, at *8 (W.D. Wash. Feb. 24, 2014); *see also Solomon v. Canon USA, Inc.*, 920 N.Y.S.2d 565, 567 (App. Term

11

2010). Given the extended functioning of the replacement compressor installed in 2010, the Court concludes that the warranty did not fail its essential purpose. Defendants provided Williams a functional compressor at no cost as required by the warranty and the compressor functioned as promised for four years, at which time Defendants offered Williams two options for repair which satisfied the warranty terms. As Williams' Heat Pump functioned properly for years at a time throughout the warranty period, the warranty did not fail its essential purpose.

### 2. Express Marketing Statements

Williams next contends that the explicit terms of the warranty were expanded by the marketing statements Defendants made in conjunction with the Heat Pump. He identifies several statements the same or similar to those he relied on in deciding to purchase the product. *See infra* at Part III.C.1.

The warranty documents provided with the Heat Pump state that "**THE EXPRESSED WARRANTIES MADE IN THIS WARRANTY ARE EXCLUSIVE AND MAY NOT BE ALTERED, ENLARGED, OR CHANGED BY ANY DISTRIBUTOR, DEALER, OR OTHER PERSON, WHATSOEVER.**" [Doc. 20-1, p. 3 (emphasis in original)]. This provision validly disclaimed any warranties which could have been created by the generic marketing statements identified by Williams.[8] *See Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *6 (N.D. Cal. July 27, 2007)

---

[8] The Court's opinion is limited to the statements identified by Williams. The Court renders no opinion about whether other statements made by Defendants could constitute warranty provisions despite the disclaimer in the express warranty accompanying the Heat Pump.

12

(concluding that extracontractual statements were not warranties where the warranty stated that its provisions were exclusive).

Moreover, as discussed below in Part III.C.1, these marketing statements largely constitute puffery which cannot be relied on by consumers. Though the advertisements contain some factual claims (i.e., "High- and low-pressure switches and the filter drier protect the unit's most single important component: the compressor"), Williams has not alleged that any of the facts are untrue.[9] Consumers were not entitled to rely on the representation that the Heat Pump "provides dependability backed by written warranty protection" to mean that the compressor would function without error. The statement merely represented that if the Heat Pump failed, this failure would be corrected as set out in the written warranty. As there is no evidence that Defendants misled customers or violated any factual guarantees made in the marketing statements, Williams cannot maintain this claim.

### B. Implied Warranty Claims (Counts II and V)

Williams contends that Defendants' actions violated the implied warranty of merchantability as the Heat Pump was not fit for its ordinary purpose.

The implied warranty of merchantability warrants that the product is "fit for the ordinary purposes for which such goods are used." Mo. Rev. Stat. 400.2-314(2)(c). "The

---

[9] Defendant notes that many of the advertisements referenced by Williams relate to the Bryant model 187A, which is not the same model Williams alleged he purchased. Construing all allegations in Williams' favor, the Court concludes that this alone does not make the statements irrelevant as Williams plead that he relied on the identified statements or statements similar to those. As similar statements may have been made regarding the 186A model purchased by Williams, the Court concludes that the statements must be analyzed for their content.

implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods *satisfy a minimum level of quality.*" *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 89-90 (Mo. Ct. App. 2011); *see also In re General Motors Corp. Anti-Lock Brake Products Liability Litigation*, 966 F.Supp. 1525, 1533 (E.D. Mo. 1997). A product does not fall short of this standard simply because it experiences periodic problems.

In this case, Williams' Heat Pump functioned as intended for four years before suffering from a premature failure, at which time Defendants satisfied their obligations under the repair and replace warranty and replaced the compressor. When it failed again four years later, Defendants again offered to replace the compressor. While the Heat Pump functioned for a far shorter period of time than expected by Williams, it successfully cooled his house for nearly a full eight years. This extensive performance satisfies a minimum level of quality such that Defendants did not breach the implied warranty of merchantability based on Williams' allegations.[10] *See Grassi v. International Comfort Products, LLC*, 2015 WL 4879410, at *4-5 (E.D. Cal. Aug. 14, 2015) (finding

---

[10] Williams cites *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 45 F.Supp.3d 706, 714 (N.D. Ohio 2014), to support his proposition that when a product fails at one of its ordinary purposes it is a breach of the implied warranty of merchantability regardless of whether the product sometimes fulfills that purpose. However, the court's discussion in *Whirlpool* suggests that the product never produced clothes free of a moldy odor. As such, the product was not fit for its ordinary purpose. Here, the Heat Pump successfully cooled Williams' home for years without incident. There is a stark difference between a product which never functions correctly and one which functions adequately for extended periods of time punctuated by breakdown. Moreover, the Court has been unable to find support for the contention that any product failure constitutes a breach of the implied warranty of merchantability or that a product that performs for four years without issue could violate the implied warranty of merchantability.

14

no violation of the implied warranty of merchantability when an air conditioning unit failed after two years and defendant fixed the defect); *Sheris v. Nissan North America Inc.*, 2008 WL 2354908, at *5 (D.N.J. June 3, 2008) (finding no violation where plaintiff drove his car for two years and over 20,000 miles without issue).

Furthermore, Missouri has adopted U.C.C. § 2-317, which provides:

> Warranties whether express or implied shall be construed as consistent with each other as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:
>
> . . .
>
> (c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

*See* Mo. Rev. Stat. § 400.2-317. Under this provision, the Court must interpret the implied warranty of merchantability as consistent with the express warranties set out above unless the construction is unreasonable. The limited warranty accompanying the Heat Pump stated that Defendants would provide a replacement compressor at no cost for the part if the compressor failed within ten years of the date the Heat Pump was purchased. Given this provision, the Court interprets the implied warranty of merchantability to accommodate for necessary repairs completed in accordance with the limited warranty. As Defendants fulfilled their obligations under the repair and replace

warranty, ultimately ensuring that Williams had a functional Heat Pump for the warranty period, there was no violation of the implied warranty of merchantability.[11]

### C. Count III: MMPA Claim

Williams also alleges that Defendants violated the Missouri Merchandising and Practices Act ("MMPA") by making deceptive marketing statements and committing unfair practices.

To state a claim under the MMPA, a plaintiff must plead that (1) the plaintiff bought merchandise from the defendant (2) for personal, family, or household purposes, (3) the plaintiff suffered an ascertainable loss of money or property, and (4) the loss was a result of an act declared unlawful in Mo. Rev. Stat. 407.020. *Wright v. Bath & Body Works Direct, Inc.*, No. 12-00099-CV-W-DW, 2012 WL 12088132, at *1 (W.D. Mo. Oct. 17, 2012).

Williams sufficiently pleaded the first three elements of an MMPA claim. He alleged that he purchased an air conditioning unit for his own residential use and claimed he suffered a total loss of about $4,800 in labor costs for the replacement of the unit's defective parts. At issue is whether Williams sufficiently pleaded the fourth element of an MMPA claim: that the loss was a result of an act declared unlawful in Mo. Rev. Stat. § 407.020, which provides

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in

---

[11] Defendants also argue that the implied warranty claim is barred by the statute of limitations. As the Court concludes that the claim fails on the merits, the statute of limitations argument is not addressed here.

16

connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice.

There are two bases on which this Court must determine whether there was a sufficiently claim: misrepresentation and unfair practice.[12]

### 1. Misrepresentation

Defendants contend that Williams did not adequately allege a violation of the MMPA due to misrepresentation. A misrepresentation occurs when "any person in connection with the advertisement or sale of merchandise [makes] any fraudulent assertion." Mo. Code Regs tit. 15, § 60-9.100(1). An assertion is fraudulent if the statement is intended to induce the purchase of merchandise and the actor "[k]nows or believes that the assertion is not in accord with the facts" or "[k]nows that he does not have a reasonable basis for" the assertion. *Id.* at § 60-9.100(2).

Williams identifies a number of statements and claims made by Defendants about their Heat Pumps in marketing the products:

- "Whatever it takes.[] RELIABLE PRODUCTS. DEALERS WHO CARE."

- The advertisement of a "10 YEAR LIMITED WARRANTY"

- A marketing brochure for the Bryant model 187A, stating "From initial design through product testing and an assembly process that includes our 5-step, 100% run test, we go beyond the industry's expectations for quality and reliability to be sure that every unit we make measures up to even tougher standards – yours."

---

[12] Like the unconscionability claim, Defendants contend that the MMPA claim was insufficiently plead under Rule 9(b). As the Court again concludes that dismissal is appropriate on the merits, the sufficiency of the pleadings is not addressed.

17

- "Bryant's Model 187A provides dependability backed by written warranty protection. The compressor is protected by a 10-year limited warranty. The entire system is covered by a 5-year limited warranty."

- The Bryant model 187A marketing brochure, which states "Our two-stage compressor is designed . . . to provide quiet, smooth-operating comfort and years of environmentally sound, energy-efficient performance."

- Statements in the same brochure that "Coil materials and design minimize chances for rust and corrosion for lasting performance," "High- and low-pressure switches and the filter drier protect the unit's most single important component: the compressor," and "Bryant's protection package ensures lasting durability and good looks."

[Complaint ¶¶ 34-39].

Defendants' claims that its products were "reliable" and "built to last,"[13] constitute non-actionable puffery. Statements that are "vague or highly subjective claims of product superiority" cannot serve as the basis for a fraud claim. *Wright*, 2012 WL 12088132 at *2; *see also Midwest Printing v. AM Intern., Inc.*, 108 F.3d 168, 170-71 (8th Cir. 1991) ("Representations . . . that compare the efficiency, economy or quality of one product to other products may not form the basis of a cause of action in fraud."); *Love v. Career Educ. Corp.*, 2012 WL 1684572, at *3-4 (E.D. Mo. May 15, 2012) (concluding that value is not something which can be quantified and therefore cannot sustain a cause of action for fraud); *Rasmussen v. Apple Inc.*, 27 F.Supp.3d 1027, 1040 (N.D. Cal. 2014) (statements that a product is "built to last" are mere puffery); *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS, 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013)

---

[13] The advertisements Williams cites promote a Bryant model 187A machine. Williams does not cite any materials associated specifically with the 286A model, which is the machine Williams purchased. Accepting all of the complainant's facts as true, this Court reviews the motion to dismiss under the impression that Williams viewed materials "identical or similar to" the cited advertisements before making his purchase.

18

(finding statements that a product is "built to last" and "dependable" too vague to be actionable). Because these statements constitute puffery, they are not misrepresentations which may serve as the basis for a fraud claim.

Defendants' statements referencing the Heat Pump's "5-step, 100% run test" and the Pump's features that "protect the unit's most single important component: the compressor" are specific factual claims that could give rise to a misrepresentation claim. However, Williams does not allege that the Heat Pump did not have these features or that Defendants misrepresented the testing of the Heat Pump. The only other factual statements remaining in Defendants' representations involve the "10 year limited warranty." Williams does not dispute the existence of the warranty, though he contends that Defendants did not meet their obligations under the warranty. Defendants' purported failure to meet their obligations, however, does not mean that Defendants misrepresented the existence of a warranty. Moreover, all of the statements Williams identified regarding the warranty clearly noted that it was a "limited" warranty. Though consumers may not have taken it upon themselves to review the specific restrictions associated with the warranty, Defendants' advertisement of a "limited warranty" did not misrepresent the content or limited coverage of the warranty. Therefore, Defendants' representations do not give rise to an MMPA claim for misrepresentation.

### 2. Unfair Practices

Finally, Williams contends that Defendants violated the MMPA's prohibition against unfair practices. An unfair practice is anything "unethical, oppressive, or unscrupulous" that "[p]resents a risk of, or causes, substantial injury to customers." Mo.

19

Code Regs tit. 15, § 60-8.020(1). Williams asserts that because Defendants replaced his defective compressor with another defective compressor, causing him to twice incur costs not covered by Defendants' warranty, Defendants engaged in an unfair practice.

Williams cites no cases to support his contention that Defendants' conduct constitutes an unfair practice. The Court has reviewed the body of case law associated with this claim, and despite the "unrestricted, all-encompassing and exceedingly broad" nature of this cause of action, has uncovered no case involving an unfair practices claim in a situation similar to the facts of this case. *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 416 (Mo. 2014). Furthermore, the Court has already concluded that Defendants' conduct abided by the implied warranty of merchantability, as well as the terms of the express warranty which fairly limited Defendants' liability for defects in the product in this case. Therefore, Defendants did not engage in unethical, oppressive, or unscrupulous conduct which would support a cause of action for unfair practices.[14]

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss is granted on all claims.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 30, 2015
Jefferson City, Missouri

---

[14] Defendants also contend that Williams failed to appropriately plead his unfair practices claim. As the Court has concluded that the factual allegations are insufficient to support the claim, it need not reach the issue of the sufficiency of the pleadings.